**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF GREENE STREET FUNDING TRUST II, *Plaintiff,* | NO: |
| v. | |
| INNOVATIVE SOLUTIONS AND IMPROVEMENTS, LLC, and KENNETH HAYWARD, *Defendants.* | |

**COMPLAINT**

Plaintiff, U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Greene Street Funding Trust II, by and through its undersigned counsel, hereby complains against Defendants as follows:

**I.      PARTIES, JURISDICTION AND VENUE**

1.      The Plaintiff is U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Greene Street Funding Trust II ("Plaintiff"), with an address in care of RF Mortgage Services Corporation, 550 W. Adams Street, Suite 950, Chicago, IL 60661.

2.      Defendant, Kenneth Hayward ("Defendant" or "Guarantor"), is a citizen of the Commonwealth of Pennsylvania, and upon information and belief, resides at 6335 E Fariston Drive, Philadelphia, PA 19120. Defendant is the guarantor of the loan secured by the real Property hereinafter described. The interest of Defendant is as Guarantor.

3.      Defendant, Innovative Solutions and Improvements, LLC, by and through its member Kenneth Hayward ("Innovative Solutions" or "Mortgagor"), is a limited liability company incorporated under the laws of the Commonwealth of Pennsylvania, and has an address of 1522 Overington Street, Philadelphia, PA 19124 (the "Property" or the "Mortgaged Premises"). Innovative Solutions is the mortgagor and real owner of the real Property hereinafter described.  The interest of Innovative Solutions in the Mortgaged Premises is as Mortgagor and Real Owner.

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), as the cause of action arose here and the Property that is the subject of this action is situated here.

## II.  FACTS

6.      On or about January 1, 2021, in consideration of a loan in the principal amount of $146,250.00, Innovative Solutions and Improvements, LLC, by and through its member Kenneth Hayward, executed and delivered to RNC Capital, LLC, a note (the "Note").  A true and correct copy of the Note is attached hereto and marked as Exhibit "A" and made a part hereof.

7.      On or about January 15, 2021, in consideration of the loan in the principal amount of $146,250.00, Kenneth Hayward, executed and delivered to RNC Capital, LLC, a personal Guaranty agreement (the "Guaranty"). A true and correct copy of the Guaranty agreement is attached hereto and marked as Exhibit "B" and made a part hereof.

8.    To secure the obligations under the Note, Innovative Solutions executed and delivered to RNC Capital, LLC a mortgage dated January 15, 2021, and recorded January 22, 2021, in the Office of the Recorder for Philadelphia County, as Instrument Number 53782704 (the "Mortgage").  A true and correct copy of the Mortgage is attached hereto and marked as Exhibit "C" and made a part hereof.

9.    The Mortgage secures the following real property (the "Mortgaged Premises"): 1522 Overington Street, Philadelphia, PA 19124.  A true and correct copy of the legal description of the Mortgaged Premises is attached hereto and marked as Exhibit "D" and made a part hereof.

10.    The Plaintiff, directly or through an agent, has possession of the Note, which has been duly endorsed. Therefore, the Plaintiff has the right to enforce the Note.

11.    The Plaintiff is the proper party by way of an Assignment of Mortgage (the "Assignment"), dated December 17, 2025, and recorded in the Recorder of Deeds for Philadelphia County on January 8, 2026, as Document ID Number 54508274. A true and correct copy of the Assignment of Mortgage is attached hereto and marked as Exhibit "E."

12.    Innovative Solutions is the record and real owner of the Mortgaged Premises.

## COUNT I
## MORTGAGE FORECLOSURE
## PLAINTIFF v. INNOVATIVE SOLUTIONS AND IMPROVEMENTS, LLC, BY AND THROUGH ITS MEMBER KENNETH HAYWARD

13.    The allegations of paragraph 1 through 12 are incorporated herein as though set forth at length.

14.    The Note and the Mortgage are in default because the monthly payments due August 1, 2024, and thereafter have not been paid.  As a result, the entire principal

balance and all interest due thereon have become due and payable with late charges, escrow deficit, and all costs of collection including, but not limited to, title search fees and reasonable attorney's fees. As a result of the default under both the Note and the Mortgage, the Guaranty is likewise in default.

15. As of February 12, 2026, the following amounts are due on the Mortgage and Note:

| | |
|---|---|
| Unpaid Principal Balance | $139,654.70 |
| Interest (Good Through February 22, 2026) | $13,802.23 |
| Cumulative Late Charges | $101.33 |
| Escrow Advance/Deficit | $5,567.79 |
| Appraisal Fee | $165.00 |
| Title Costs | $655.00 |
| Hazard Insurance Advance | $3,750.00 |
| FC Fees | $2,491.38 |
| Default Interest from 8/1/2024 to 2/22/2026 | $37,041.00 |
| Lien Release Fee | $250.00 |
| Wire Fee | $10.00 |
| Corporate Advance Credit (7.11.2024) | $-1,328.67 |
| **Total Amount Due** | **$202,159.76** |

*\* Non-Interest Bearing*

The current interest rate is 6.01000%. *Per diem* interest in the amount of $89.22 will accrue on the principal unless there is an interest rate change as set forth in the Note.

16. Pennsylvania laws Act 6 of 1974 and Act 91 of 1982 are not applicable as this action involves a commercial loan. Notice of default as required by the terms of the Mortgage have been sent to the Defendants. Copies of the Notices, redacted to remove confidential account information, are attached hereto and marked as Exhibit "F."

**WHEREFORE,** the Plaintiff requests judgment against Defendant Innovative Solutions and Improvements, LLC, by and through its member Kenneth Hayward under Count I in the sum of **$202,159.76**, together with interest, costs (including additional escrow advances), and additional attorney's fees and costs, and for United States Marshall's foreclosure sale of the Mortgaged Premises.

## COUNT II
## BREACH OF CONTRACT
## PLAINTIFF v. INNOVATIVE SOLUTIONS AND IMPROVEMENTS, LLC, BY AND THROUGH ITS MEMBER KENNETH HAYWARD

17.    Plaintiff incorporates by reference paragraphs 1 through 16 as though set forth at length.

18.    By virtue of the default of Innovative Solutions under the subject Mortgage/Note obligation, Plaintiff is entitled to the entry of an *in personam* money judgment against Innovative Solutions for the total amounts due and owing set forth herein, **$202,159.76.**

**WHEREFORE,** Plaintiff demands judgment against Innovative Solutions and Improvements, LLC, by and through its member Kenneth Hayward under Count II in the sum of **$202,159.76** together with interest from July 1, 2024, at the rate set forth in the Note through the date of judgment, and other costs and charges collectible under the Note.

## COUNT III
## BREACH OF GUARANTY AGREEMENT
## PLAINTIFF v. KENNETH HAYWARD

19.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 18 as though set forth at length herein.

20.    By virtue of the default of Innovative Solutions under the subject Mortgage/Note obligation, the Guaranty is likewise in default.    Therefore, Plaintiff is

entitled to the entry of an *in personam* money judgment against Guarantor for the total amounts due and owing set forth herein, **$202,159.76.**

**WHEREFORE,** Plaintiff demands judgment against Guarantor Kenneth Hayward under Count III in in the sum of **$202,159.76** together with interest from July 1, 2024, at the rate set forth in the Note through the date of judgment, and other costs and charges collectible under the Guaranty.

Respectfully submitted,

Date: _4.16.2026_

BY: _____
Stephen M. Hladik, Esq., ID No. 66287
Robert W. Williams, Esq., ID No. 315501
298 Wissahickon Avenue
North Wales, PA 19454
(215) 855-9521
*Attorneys for Plaintiff*

# EXHIBIT "A"



## COMMERCIAL PROMISSORY NOTE

1. Promise to Pay. FOR VALUE RECEIVED, Innovative Solutions and Improvements LLC, as borrower (the "Borrower"), a Pennsylvania limited liability company with a principal place of business of 6335 E Fariston Dr, Philadelphia, PA 19120 promises to pay to the order of RCN Capital, LLC, a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, or its assigns (collectively, the "Holder"), the principal sum of One Hundred Forty-Six Thousand Two Hundred Fifty Dollars and No Cents ($146,250.00) (the "Loan"), together with interest on the Loan computed from the date advanced (the "Commencement Date"), all as hereinafter provided, subject to the terms and conditions of a certain Commercial Loan Agreement (the "Loan Agreement"), executed by Borrower and Holder, and upon the following terms, agreements, and conditions:

2. Interest. Interest shall accrue on the unpaid Loan at the rate of 6.01% per annum. Interest is calculated on the basis of a 360-day year and a 30-day month.

3. Maturity Date. The unpaid Loan, all accrued interest thereon, and all other fees or charges shall be due and payable on February 1, 2051 (the "Maturity Date"), provided, however, that from and after (i) the Maturity Date, whether upon stated maturity, acceleration, or otherwise, or (ii) the date on which the interest rate hereunder is increased to the Default Rate (as hereinafter defined) as provided herein, interest shall be computed at the Default Rate.

4. Payments. Beginning on March 1, 2021 and continuing on the first (1st) day of each month thereafter, through and including the Maturity Date, Borrower shall make monthly principal and interest payments in accordance with this Section, which payments shall be applied to the outstanding principal balance of the Note. Holder shall calculate the total amount of principal payments payable from February 1, 2021 to the Maturity Date based upon a 30-year amortization schedule, an amortization period which begins on February 1, 2021, a fixed interest rate equal to the interest rate in effect as of February 1, 2021, and the outstanding principal balance of the Note as of February 1, 2021. The monthly principal payment shall equal the total amount of principal payable for such period (calculated as set forth above) divided by the number of monthly payments during such period. The initial monthly principal and interest payment amount is $877.78. The foregoing notwithstanding, upon any additional advance of funds Holder shall recalculate the amount of the monthly principal and interest payment owing for the remainder of the Note term, based on the new outstanding principal balance and the interest rate then in effect, and such revised principal and interest payment shall be due commencing on the first (1st) day of the month immediately following the month in which such additional advance or prepayment (as applicable) is made. All unpaid principal, interest, and other sums due hereunder shall be due and payable in full on the Maturity Date. All payments shall be payable in lawful money of the United States of America and shall be made by wire transfer to an account designated by Holder to Borrower from time to time, or at Holder's election, shall be made through automated clearing house (ACH) transfers from an account designated by Borrower. All payments will be applied first to any unpaid collection costs and late charges, then to accrued and unpaid interest, and any remaining amount to principal. Whenever any payment to be made hereunder shall be due on a day other than a business day, such payment shall be made on the next succeeding business day. The term "business day" as used herein shall mean any day other than a Saturday, Sunday, or public holiday.

5. Prepayment of the Indebtedness. If Borrower makes any prepayment of principal owing under this Note, in whole or in part, on or before the five-year anniversary of the Closing Date (as defined in the Loan Agreement), Borrower shall pay Holder a prepayment premium (the "Prepayment Premium") as follows: For any principal prepayment made on or prior to the one-year anniversary of the Closing Date, the Prepayment Premium shall equal FIVE PERCENT (5.00%) of the amount prepaid. For any principal prepayment made after the one-year anniversary of the Closing Date, but on or before the two-year anniversary of the Closing Date, the Prepayment Premium shall equal FOUR PERCENT (4.00%) of the amount prepaid. For any principal prepayment made after the two-year anniversary of the Closing Date, but on or before the three-year anniversary of the Closing Date, the Prepayment Premium shall equal THREE PERCENT (3.00%) of the amount prepaid. For any principal prepayment made after the three-year anniversary of the Closing Date, but on or before the four-year anniversary of the Closing Date, the Prepayment Premium shall equal TWO PERCENT (2.00%) of the amount prepaid. For any principal prepayment made after the four-year anniversary of the Closing Date, but on or before the five-year anniversary of the Closing Date, the Prepayment Premium shall equal ONE PERCENT (1.00%) of the amount

prepaid. For purposes of this Section 5, the term "Prepayment" includes any payment or other reduction of the balance due under this Note, regardless of whether such payment or other reduction is: (a) is voluntary or involuntary; (b) is occasioned by Holder's acceleration of the Maturity Date or demand hereunder; (c) is made by Borrower or by a third party; (d) the product of Holder's receipt or collection of proceeds of the real property securing this Note, or any other collateral securing this Note, including insurance proceeds and condemnation awards; (e) the product of Holder's exercise of its right of set-off; or (f) made during a bankruptcy, reorganization or other proceeding, or is made pursuant to any plan of reorganization or liquidation.

6. Default. At the election of Holder, the Maturity Date may be accelerated, and all sums due hereunder shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (a) Any failure by Borrower to pay in full any sum due hereunder on or before the date such sum is due; (b) Any failure by Borrower to perform or observe any other term or provision herein; (c) Any default under the Security Instrument (as hereinafter defined), a default under the Guaranty (as hereinafter defined) or a default under or misrepresentation contained in any other agreement, document, or certificate of Borrower or any Guarantor (as hereinafter defined) in connection with the Loan, which default is not cured within any grace period expressly provided therefor in such document; (d) Borrower shall: (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or substantially all of its property and assets; (ii) make a general assignment for the benefit of its creditors; (iii) be dissolved or liquidated; (iv) become insolvent (as such term may be defined or interpreted under any applicable statute); (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or (vi) take any action for the purpose of effecting any of the foregoing. In addition to the rights and remedies provided herein, Holder may exercise any other right or remedy available under applicable law or under any other document, instrument, or agreement evidencing, securing, or otherwise relating to the indebtedness evidenced hereby, in accordance with the terms thereof, all of which rights and remedies shall be cumulative. The payment and acceptance of any sum shall not be considered a waiver of such right of election. Borrower hereby agrees to indemnify, defend, and hold Holder harmless from and against any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by Holder in connection with, or as a result of, any Event of Default.

7. Default Rate. Beginning on the earlier of (i) the Maturity Date; (ii) the date on which an Event of Default occurs; or (iii) the date on which Holder accelerates the entire amount of the indebtedness due hereunder, without notice or any required action by Holder; the Loan will accrue interest at a rate (the "Default Rate") equal to the lesser of (i) Twenty-Three Percent (23%) per annum; or (ii) the Maximum Rate (as hereinafter defined)). Following an Event of Default, interest will continue to accrue at the Default Rate until such Event of Default, and any other Events of Default are cured. In the event Holder, obtains a judgment on this promissory note the interest will continue to accrue at the Default Rate after judgment until all sums are paid in full. Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid, or agreed to be paid, hereunder exceed the highest lawful rate permitted under any applicable usury law (the "Maximum Rate") and the payment obligations of Borrower under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the aggregate amounts paid on this promissory note (as may be amended, restated, or modified from time to time, the "Note"'), should cause the effective interest rate of the Note to exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to be the result of a mistake on the part of both Borrower and Holder. The party that receives such excess payments shall promptly credit such excess (to the extent such payments in excess of the Maximum Rate) against the unpaid principal balance hereof. Any portion of such excess payments not capable of being so credited will be refunded to Borrower.

8. Late Charges. If any payment of interest is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of (i) ten percent (10%) of such overdue payment; or (ii) the maximum amount permitted by applicable law shall automatically become due to the Holder of this Note. If any payment of principal is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of: (i) three percent (3%) of such overdue payment; or (ii) the maximum amount permitted by applicable law; shall automatically become due to the Holder of this Note. Said late charges do not constitute interest and shall constitute compensation to Holder of this Note for collection administration costs incurred hereunder. In addition,

Page 2 of 5

if any payment of principal or interest is not paid when due, the rate of interest per annum on the outstanding Loan shall increase to the Default Rate and such rate increase shall remain in force and effect for so long as such default shall continue. This paragraph shall not be construed as an agreement or privilege to extend the due date of any payment, nor as a waiver of any other right or remedy accruing to Holder by reason of any default or Event of Default.

9. Security and Guaranty. The obligations hereunder, including the obligation to make full and timely payments of principal and interest, are secured by, among other things, the following: the Loan Agreement; a certain Commercial Guaranty (the "Guaranty") executed by Kenneth Hayward (the "Guarantor"); a certain Mortgage, Assignment of Rents, and Security Agreement (the "Security Instrument") granted by Innovative Solutions and Improvements LLC, in favor of RCN Capital, LLC, encumbering the real property and improvements at 1522 Overington St, Philadelphia, PA 19124.

10. Reservation of Holder's Rights. Notwithstanding any course of dealing or course of performance: (i) neither failure nor delay on the part of Holder to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege; (ii) no notice to or demand upon Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Holder to take further action without notice or demand; and (iii) no amendment, modification, rescission, waiver, or release of any provision of this Note shall be effective unless the same shall be in writing and signed by Holder.

11. Costs and Expenses. Borrower will pay to Holder all costs and expenses of collection hereof (including reasonable attorneys' fees).

12. Completion of Instrument; Reproduction Admissible; Counterparts. Borrower authorizes Holder to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note shall be admissible in evidence with the same effect as the original Note in any judicial or other proceeding, whether or not the original is in existence. This Note may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Note may be detached from any counterpart of this Note without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Note identical in form hereto but having attached to it one or more additional signature pages.

13. WAIVER OF RIGHTS/DELAY; WAIVER OF JURY TRIAL. BORROWER AND EACH SURETY, ENDORSER, AND GURANTOR HEREOF ACKNOWLEDGE THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVE THE RIGHT TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, and further waive diligence, demand, presentment for payment, notice of nonpayment, protest and notice of protest, notice of any renewals or extensions of this Note, and all rights under any statute of limitations, and agree that the time for payment in this Note may be changed and extended as provided in the Loan Agreement, without impairing their liability thereon, and further consent to the release of all or any part of the security for the payment hereof, or the release of any party liable for this obligation without affecting the liability of the other parties hereto. Any delay on the part of Holder in exercising any right hereunder shall not operate as a waiver of any such right, and any waiver granted for one occasion shall not operate as a waiver in the event of any subsequent default. In the interest of a speedy resolution of a lawsuit which may arise hereunder, Borrower and each accommodation maker and endorser under this Note waive a trial by jury in any action with respect to this Note and as to any issues arising relating to this Note. Any funds received by Holder after maturity, whether by acceleration or otherwise, shall be applied to amounts then due and Holder's acceptance of any such funds shall not be construed as a waiver of Borrower's default.

14. Governing Law. This Note shall be governed by, and shall be construed and interpreted in accordance with, the laws of the state of Connecticut.

15. Binding Effect. The terms and provisions of this Note shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Holder and its successors and assigns.

[Remainder of page intentionally left blank]

Page 4 of 5

IN WITNESS WHEREOF, the undersigned have executed this Commercial Promissory Note on ___Jan___ ___1___, 20_21_.

Innovative Solutions and Improvements LLC

By: _____
Name: Kenneth Hayward
Title: Sole Member


STATE OF ___PA___                    )
                                     )ss. _____
COUNTY OF ___Phila___                )

I certify that on ___1/15___, 20_21_, Kenneth Hayward came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as Sole Member of Innovative Solutions and Improvements LLC (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and its members.

_____ Pamela Ann Rader
Notary Public

Commonwealth of Pennsylvania - Notary Seal
Pamela Ann Rader, Notary Public
Delaware County
My commission expires May 27, 2022
Commission number 1133570
Member, Pennsylvania Association of Notaries

Page 5 of 5

## ALLONGE TO COMMERCIAL PROMISSORY NOTE

This Allonge to Commercial Promissory Note is to be affixed to and made a part of that certain Commercial Promissory Note in the stated principal amount of **One Hundred Forty-Six Thousand Two Hundred Fifty Dollars and No Cents ($146,250.00)**, executed by **Innovative Solutions and Improvements LLC**, a Pennsylvania limited liability company with a principal place of business of 6335 E Fariston Dr, Philadelphia, PA 19120 and made to the order of **RCN Capital, LLC**, a Connecticut limited liability company, having a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074.

Pay to the order of _____,
WITHOUT RECOURSE OR WARRANTY.

Dated as of January 22, 2021.

**RCN Capital, LLC**

By: _____
Matthew Gunter, Authorized Signer

STATE OF CONNECTICUT    )
                        )ss. South Windsor
COUNTY OF HARTFORD      )

I certify that on January 22, 2021, **Matthew Gunter** came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as Authorized Signer of RCN Capital, LLC, a Connecticut limited liability company (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and/its members.

_____
Notary Public



ANGELA DiTOMMASO
Notary Public of Connecticut
My Commission Expires 03/31/2022

# EXHIBIT "B"

# GUARANTY



## COMMERCIAL GUARANTY

THIS COMMERCIAL GUARANTY (the "Guaranty") is made by **Kenneth Hayward**, as guarantor ("Guarantor"), an individual, residing at 6335 E Fariston Dr, Philadelphia, PA 19120.

FOR VALUE RECEIVED, Guarantor hereby unconditionally and absolutely guarantees the prompt payment and performance of a certain Commercial Promissory Note (the "Note") in the principal amount of One Hundred Forty-Six Thousand Two Hundred Fifty Dollars and No Cents ($146,250.00), plus interest, fees, and any other charges due thereunder (all sums due under the aforesaid Note are hereinafter referred to collectively, as the "Indebtedness") made and delivered simultaneously with this Guaranty by Innovative Solutions and Improvements LLC, as borrower ("Borrower") a Pennsylvania limited liability company, in favor of RCN Capital, LLC, a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, and its assigns (collectively, the "Holder"); and all monies coming due under a certain Commercial Loan Agreement (the "Loan Agreement") between Borrower and Lender, any mortgage or any other document granted to secure the Indebtedness, any environmental indemnification agreement, and any other document executed in relation to and simultaneously with the Indebtedness (all of the foregoing document are hereinafter referred to collectively as the "Loan Documents").

1. Consent to Modifications. Guarantor consents to any change in the terms and conditions of the Loan Documents, including but not limited to, any change in the collateral provided in the Loan Documents or any change with respect to the parties who may be liable with respect to the Loan Documents, with notice to, or further assent by, Guarantor. Guarantor is to remain bound upon this Guaranty, notwithstanding any such change or extension or release, substitution, exchange or other indulgence granted any maker of the Indebtedness. Guarantor hereby waives all defenses, counterclaims, or offsets which Guarantor might have by reason of any change in or to the Loan Documents or any release, exchange, surrender, or impairment of security, or any addition or release of any party liable with respect to the Loan Documents.

2. Default. Upon any default of Borrower in the payment or performance under any of the Loan Documents, Holder may enforce this Guaranty immediately against Guarantor and may exercise remedies under any security instruments given to secure the obligations under this Guaranty, without the necessity of any suit or action against Borrower or any other party and without resorting to and without regard to any collateral or any other guarantee or any other source of payment. In the event of default under any of the Loan Documents, Guarantor further agrees to pay all costs, without limitation, reasonable attorneys' fees, incurred or expended by Holder in the collection or attempted collection under this Guaranty and in realization of any lien or security interest securing amounts due hereunder, including, without limitation, those incurred as a result of Holder's participation in any proceeding involving Guarantor under the Federal Bankruptcy Code.

3. Delay or Omission No Waiver; Continuing Guaranty. No delay or omission in exercising any right hereunder shall operate as a waiver of such right or any other right; and a waiver on one occasion shall not be a bar to or waiver of any right on any other occasion. This Guaranty is a continuing guaranty which shall take effect on its delivery to Holder and shall remain in full force and effect and be binding upon Guarantor until the complete satisfaction of all of the obligations set forth in the Loan Documents.

4. Waiver. Guarantor hereby waives demand, presentment, protest, and notice of acceptance of this Guaranty by Holder, and of any loans made, extensions granted or other action taken in reliance hereon and all other demands and notices of any description in connection with this Guaranty, or under the Loan Documents.

5. Representations and Warranties. Guarantor represents and warrants that: (a) Guarantor is deriving direct financial benefit from the Indebtedness; (b) Guarantor is not now insolvent and will not be rendered insolvent by the execution hereof or the performance hereunder; (c) there are no actions, suits or proceedings pending, and Guarantor has not received notice of any actions, suits, proceedings, against or affecting Guarantor, or the properties of Guarantor before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to Guarantor, would have a material adverse effect on the financial condition, properties or operations of Guarantor; (d) the most recent financial statements of Guarantor, copies of which statements have been furnished to Holder, fairly present the financial condition of Guarantor as of such dates in accordance with generally accepted accounting principles applied on a consistent

basis, and since the date of each of such financial statements, there has been no material adverse change in such condition or operations; (e) Guarantor is not a party to any indenture, loan or credit agreement or any lease or other agreement or instrument or subject to any charter or other restriction which would have a material adverse effect on the ability of Guarantor to carry out its obligations hereunder; (f) no information, exhibit or report furnished by Guarantor to Holder in connection with the negotiation of this Guaranty contained as of the date thereof, or, if there be no such date, the date of furnishing thereof, any untrue statements of a material fact and do not omit to state any material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading; (g) this Guaranty constitutes the valid and legally binding obligation of Guarantor, enforceable in accordance with its terms, except as the enforcement may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditor's rights generally; and (h) all authorizations, consents and approvals of governmental bodies or agencies required in connection with the execution and delivery of this Guaranty, or in connection with the performance of Guarantor's obligations hereunder, if any, have been obtained as required hereunder or by law

6. Dealing with Borrower and Others. Without incurring responsibility to Guarantor and without impairing or releasing the liabilities and obligations of Guarantor hereunder, Holder may, at any time and from time to time, without the consent of or notice to Guarantor, upon any terms or conditions and in whole or in part shall have the right to: (a) sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order, any property by whomsoever at any time pledged, assigned, mortgaged or in which a security interest is given to secure, or howsoever securing, the liabilities and obligations of Borrower; (b) exercise or refrain from exercising any rights against Borrower or other persons or entities (including Guarantor) or against any security given by Borrower or other persons or entities (including Guarantor), or otherwise act or refrain from acting; (c) Settle or compromise any liabilities and obligations of Borrower to Holder, dispose of any security therefor, with or without consideration, or any liability incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liabilities and obligations of Borrower (whether due or not) to creditors of Borrower other than Holder and Guarantor; and (d) apply any sums by whomsoever paid and howsoever realized for the benefit of Borrower to any liabilities and obligations of Borrower, subject to the provisions of the Loan Documents.

7. Subrogation. So long as: (i) the Indebtedness remains unpaid; (ii) any liabilities and obligations of Borrower exist under the Loan Documents; or (iii) any liabilities and obligations of Guarantor exist under this Guaranty; Guarantor waives any and all rights of indemnification, reimbursement, subrogation or contribution which Guarantor may otherwise have now or hereafter as a matter of law against Borrower.

8. Obligations Absolute; No Impairment; Rights Cumulative. The liabilities and obligations of Guarantor hereunder shall be absolute and unconditional irrespective of: (i) any lack of validity or enforceability of the Indebtedness or any other Loan Document; (ii) the insolvency of, or the voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or other similar proceedings affecting Borrower, Guarantor, any other guarantor of the Indebtedness, or any assets owned by the aforementioned persons or entities; or (iii) any other circumstance or claim which otherwise might constitute a defense available to, or a discharge of, Borrower with respect to its liabilities and obligations under the Loan Documents, or of Guarantor with respect to this Guaranty. No invalidity, irregularity or unenforceability of all or any part of any liabilities and obligations of Borrower or the impairment or loss of any security therefor, whether caused by any actions or inactions of Holder, or otherwise, shall affect, impair or be a defense to this Guaranty. All rights, powers and remedies afforded to Holder by reason of this Guaranty are separate and cumulative remedies, and no one of such remedies whether or not exercised by Holder shall be deemed to exclude any of the other remedies available to Holder nor prejudice the availability of any other legal or equitable remedy which Holder may have with respect to the Indebtedness.

9. COMMERCIAL TRANSACTION. GUARANTOR ACKNOWLEDGES THAT THIS GUARANTY AND EACH TRANSACTION RELATED TO IT IS A "COMMERCIAL TRANSACTION" WITHIN THE MEANING OF CHAPTER 903A OF THE CONNECTICUT GENERAL STATUTES, AS AMENDED. GUARANTOR WAIVES ANY RIGHT WHICH THEY MIGHT HAVE TO A NOTICE AND A HEARING OR A PRIOR COURT ORDER, UNDER SAID CHAPTER 903A OR AS OTHERWISE PROVIDED UNDER ANY APPLICABLE FEDERAL OR STATE LAW, IN THE

**EVENT HOLDER SEEKS ANY PREJUDGMENT REMEDY IN CONNECTION WITH THIS GUARANTY.**

10. Joint and Several Liability; Successors and Assigns; Counterparts. The liability of Guarantor under this Guaranty shall be joint and several with that of each and every other guarantor under any other Commercial Guaranty executed in connection with the Loan. This Guaranty shall inure to the benefit of Holder, and its successors and assigns, and it shall be binding upon Guarantor and the executors, administrators, heirs, successors, and assigns, of Guarantor. This Guaranty may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Guaranty may be detached from any counterpart of this Guaranty without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Guaranty identical in form hereto but having attached to it one or more additional signature pages.

11. Governing Law. This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of Connecticut and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state without regard to conflicts of laws considerations; and this Guaranty shall be construed without regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted; and no defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of Connecticut. The undersigned agrees to submit to personal jurisdiction in the State of Connecticut in any action or proceeding arising out of this Guaranty and, in furtherance of such agreement, the undersigned hereby agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the undersigned in any such action or proceeding may be obtained within or without the jurisdiction of any court located in Connecticut and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by registered mail to or by personal service at the last known address of the undersigned, whether such address be within or without the jurisdiction of any such court.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the undersigned have executed this Commercial Guaranty on _Jan_ _15_, 20_21_.

Kenneth Hayward

Kenneth Hayward

STATE OF ___PA___ )
)ss. _____
COUNTY OF ___Phila___ )

On the _15th_ day of _Jan_, in the year 20_21_, before me, the undersigned, a Notary Public in and for said State, personally appeared Kenneth Hayward, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Pamela Ann Rader

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Pamela Ann Rader, Notary Public
Delaware County
My commission expires May 27, 2022
Commission number 1133570
Member, Pennsylvania Association of Notaries

# EXHIBIT "C"

eRecorded in Philadelphia PA   Doc Id: 53782704
01/22/2021 12:49 PM     Page 1 of 16     Rec Fee: $226.75
Receipt#: 21-08123
Records Department     Doc Code: M

.................................... Space Above Line for Recorder's Use ....................................

# MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

TAX PARCEL
NUMBER(S):                           23-2117500

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso<br>ADiTommaso@EliteCommercialClosings.com<br>RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |

| CERTIFICATE OF RESIDENCE | |
|---|---|
| I CERTIFY THAT THE PRECISE ADDRESS OF MORTGAGEE IS: | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |
| SIGNATURE: | AGENT ON BEHALF OF THE MORTGAGEE |

/ 62000 /

..................................... Space Above Line for Recorder's Use .....................................

# MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

TAX PARCEL
NUMBER(S):                    23-2117500

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso<br>ADiTommaso@EliteCommercialClosings.com<br>RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |

| CERTIFICATE OF RESIDENCE | |
|---|---|
| I CERTIFY THAT THE PRECISE ADDRESS OF MORTGAGEE IS: | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |
| SIGNATURE: | _____<br>AGENT ON BEHALF OF THE MORTGAGEE |

62000 /

Page 1 of 16

## MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (the "Instrument") is made by **Innovative Solutions and Improvements LLC**, as mortgagor (the "Mortgagor"), a Pennsylvania limited liability company with a principal place of business at 6335 E Fariston Dr, Philadelphia, PA 19120; in favor of **RCN Capital, LLC**, as mortgagee (the "Mortgagee"), a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074.

### RECITAL

Mortgagor is indebted to Mortgagee in the principal amount of **One Hundred Forty-Six Thousand Two Hundred Fifty Dollars and No Cents ($146,250.00)**, as evidenced by Mortgagor's Commercial Promissory Note (as the same may be amended, restated, or modified from time to time, the "Note"), payable to Mortgagee, executed and delivered contemporaneously with this Instrument, and maturing on February 1, 2051 (the "Maturity Date"), subject to the terms and conditions of that certain Commercial Loan Agreement (as the same may be amended from time to time, the "Loan Agreement"), between Mortgagor and Mortgagee executed and delivered contemporaneously herewith.

### AGREEMENT

TO SECURE TO MORTGAGEE the full and prompt payment and performance of each and all of Mortgagor's obligations under the Note, and the performance of the covenants and agreements of Mortgagor contained in this Instrument, and in any other documents evidencing, securing, or now or hereafter executed in connection with the Note (each, a "Loan Document"; collectively, the "Loan Documents"; and all of the indebtedness, obligations, and liabilities of Mortgagor arising under the Note, the Loan Documents, or both, and any and all renewals, modifications, rearrangements, amendments, or extensions thereof, are sometimes hereinafter referred to as the "Indebtedness"), Mortgagor hereby MORTGAGES, WARRANTS, HYPOTHECATES, AND ASSIGNS to Mortgagee the following described property (collectively, the "Premises"):

A    The real property located in Philadelphia County, Pennsylvania, at **1522 Overington St, Philadelphia, PA 19124**, as such real property is more particularly described in SCHEDULE 1, attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim; together with all right, title, and interest of Mortgagor in and to (i) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the real property or the Improvements (as hereinafter defined), (ii) any strips or gores between the real property and abutting or adjacent properties, and (iii) all water and water rights, timber, crops and mineral interests pertaining to the real property (such real property and other rights, titles, and interests being hereinafter sometimes called the "Land");

B    All buildings, structures, improvements now constructed or at any time in the future constructed or placed upon the Land, including any future alterations, replacements and additions (the "Improvements");

**Page 2 of 16**

C   All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Mortgagor which are now or hereafter is attached to the Land or the Improvements so as to constitute a fixture under the laws of the commonwealth of Pennsylvania, and used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (all of which are herein sometimes referred to together as "Accessories");

D   All (i) plans and specifications for the Improvements; (ii) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (iii) deposits including, but not limited to, Mortgagor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Documents (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (iv) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (v) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (vi) other properties, rights, titles and interests, if any, specified in any Section of this Instrument as being part of the Premises;

E   All rents (whether from residential or non-residential space), revenues, and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Premises, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Mortgagor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due, or to become due (all of which are herein sometimes referred to together as the "Rents");

F   All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Premises, or any portion of the Premises (including proprietary leases or occupancy agreements if Mortgagor is a cooperative housing corporation), and all modifications, extensions or renewals (all of which are herein sometimes referred to together as the "Leases");

G   All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of or arising from, as the case may be, (i) the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), and (F); (ii) any sale, lease or other disposition thereof; (iii) each policy of insurance relating

**Page 3 of 16**

thereto (including premium refunds); (iv) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (v) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

H   All other interests of every kind and character, and proceeds thereof, which Mortgagor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), (F), (G), and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

Mortgagor does hereby represent and warrant that Mortgagor is lawfully seized of the Premises and has the right, power and authority to MORTGAGE, PLEDGE, HYPOTHECATE, GRANT, WARRANT, CONVEY AND ASSIGN the Premises, and that the Premises are unencumbered except for those encumbrances (the "Permitted Encumbrances") shown on the schedule of exceptions to coverage in the Title Policy (as defined in the Loan Agreement), issued to and accepted by Mortgagee contemporaneously with the execution and recordation of this Instrument and insuring Mortgagee's interest in the Premises. Mortgagor does hereby covenant and agree that Mortgagor will warrant and defend generally the title to the Premises against all claims and demands, subject to the Permitted Encumbrances.

In consideration of the aforesaid, and in order to more fully protect the security of this Instrument, Mortgagor hereby represents, warrants, covenants, and agrees as follows:

1. Inspection. Mortgagee and any other Person authorized by Mortgagee shall have the right to enter and inspect the Premises at all reasonable times.

2. Security Agreement. This Instrument is also a security agreement between Mortgagor, as debtors, and Mortgagee, as secured party, for any of the Premises which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code in the commonwealth of Pennsylvania (the "UCC"), for the purpose of securing Mortgagor's obligations under this Instrument and to further secure Mortgagor's obligations under the Note, and other Loan Documents, whether such Premises are owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, the "UCC Collateral"), and by this Instrument, Mortgagor hereby grants to Mortgagee a security interest in the Collateral. To the extent necessary under applicable law, Mortgagor hereby authorizes Mortgagee to prepare and file financing statements, continuation statements and financing statement amendments in such form as Mortgagee may require to perfect or continue the perfection of this security interest. If an Event of Default (as hereinafter defined) has occurred and is continuing, Mortgagee will have the remedies of a secured party under the UCC, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Mortgagee may exercise its remedies against the Collateral separately or together, and in any order, without in any way affecting the availability of Mortgagee's other remedies. This Instrument also constitutes a financing statement with respect to any part of the Premises that is or may become a fixture, if permitted by applicable law.

3. Taxes and Other Charges. Mortgagor is responsible for the payment of all taxes ("Taxes"), assessments for local improvements ("Assessment"), rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever. Upon Mortgagee's request, Mortgagor shall deliver to Mortgagee within five (5) days of any such request, proof of payment of any and all Impositions, in form satisfactory to Mortgagee.

4. Insurance. Mortgagor shall keep the Premises insured in accordance with the provisions of the Loan Agreement.

5. Liens. Mortgagor shall not, directly or indirectly, create or suffer or permit to be created, or to stand, against the Premises or any portion thereof, or against the rents, issues and profits therefrom, any lien, charge, mortgage, deed of trust, adverse claim or other encumbrance, whether senior or junior to the lien of this Instrument, other than the lien of this Instrument and the Permitted Encumbrances.

6. Due on Sale or Encumbrance. Should the title to the Premises, or any part thereof or any interest therein, be transferred to any Person, firm or entity other than the Borrower, or should the ownership of the Premises, or any part thereof, become vested in any owner other than the Borrower, or should any lien, mortgage or any other encumbrance, voluntary or involuntary, be placed against the Premises, or in any of the foregoing events, the entire principal balance due under the Note, together with all accrued interest thereunder, shall at the election of Mortgagee, be and become immediately due and payable in full, subject to applicable law, and Mortgagee shall be entitled to pursue all remedies provided for in this Instrument or at law, including without limitation, foreclosure of the lien of this Instrument.

7. Assignment of Rents; Appointment of Receiver; Mortgagee in Possession. (A) As part of the consideration for the Indebtedness, Mortgagor absolutely and unconditionally assigns and transfers to Mortgagee all Rents. It is the intention of Mortgagor to establish a present, absolute and irrevocable transfer and assignment to Mortgagee of all Rents and to authorizes and empower Mortgagee to collect and receive all Rents without the necessity of further action on the part of the Borrower. Promptly upon request by Mortgagee, Mortgagor agrees to execute and deliver such further assignments as Mortgagee may from time to time require. Mortgagor and Mortgagee intend this assignment of Rents to be immediately effective and to constitute an absolute, present, and unconditional assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, the Rents will not be deemed to be a part of the Premises. However, if this present, absolute, and unconditional assignment of the Rents is not enforceable by its terms under the laws of the commonwealth of Pennsylvania, then the Rents will be included as a part of the Premises and it is the intention of Mortgagor that in this circumstance this Instrument create and perfect a lien on the Rents in favor of Mortgagee, which lien will be effective as of the date of this Instrument. (B) Until the occurrence of an Event of Default, Mortgagee hereby grants to Mortgagor a revocable license to collect and receive all the Rents, to hold all the Rents in trust for the benefit of Mortgagee and to apply all the Rents to pay the installments of interest and principal then due and payable under the Note and the other

amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, and to pay the current costs and expenses of managing, operating and maintaining the Premises, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Mortgagor free and clear of, and released from, Mortgagee's rights with respect to the Rents under this Instrument. After the occurrence of an Event of Default, and during the continuance of such Event of Default, Mortgagor authorizes Mortgagee to collect, sue for, and compromise the Rents and directs each tenant of the Premises to pay all the Rents to, or as directed by, Mortgagee. From and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Mortgagee entering upon and taking and maintaining control of the Premises directly, or by a receiver, Mortgagor's license to collect the Rents will automatically terminate and Mortgagee will, without notice, be entitled to all the Rents as they become due and payable, including the Rents then due and unpaid. Mortgagor will pay to Mortgagee upon demand all the Rents to which Mortgagee is entitled. At any time on or after the date of Mortgagee's demand for the Rents, Mortgagee may give, and Mortgagor hereby irrevocably authorizes Mortgagee to give, notice to all tenants of the Premises instructing them to pay all Rents to Mortgagee. *No tenant will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No tenant will be obligated to pay to* Mortgagor *any amounts which are actually paid to* Mortgagee *in response to such a notice.* Any such notice by Mortgagee will be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Mortgagor will not interfere with and will cooperate with Mortgagee's collection of such Rents. (C) If an Event of Default has occurred and is continuing, then Mortgagee will have each of the following rights and may take any of the following actions: (i) Mortgagee may, regardless of the adequacy of Mortgagee's security or the solvency of Mortgagor and even in the absence of waste, enter upon and take and maintain full control of the Premises in order to perform all acts that Mortgagee in its discretion determines to be necessary or desirable for the operation and maintenance of the Premises, including the execution, cancellation, or modification of the Leases, the collection of all the Rents, the making of repairs to the Premises and the execution or termination of contracts providing for the management, operation or maintenance of the Premises, for the purposes of enforcing the assignment of the Rents pursuant to Section 7(A) of this Instrument, protecting the Premises or the security of this Instrument, or for such other purposes as Mortgagee, in its discretion, may deem necessary or desirable. (ii) Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Mortgagee's security, without regard to Mortgagor's solvency and without the necessity of giving prior notice (oral or written) to Mortgagor, Mortgagee may apply to any court having jurisdiction for the appointment of a receiver for the Premises to take any or all of the actions set forth in the preceding sentence. If Mortgagee elects to seek the appointment of a receiver for the Premises at any time after an Event of Default has occurred and is continuing, Mortgagor's, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. (iii) If Mortgagor is a housing cooperative corporation or association, Mortgagor hereby agrees that if a receiver is appointed, the order appointing the receiver may contain a provision requiring the receiver to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including the Taxes,

**Page 6 of 16**

Impositions, Assessments, and Insurance, it being acknowledged and agreed that the Indebtedness is an obligation of Mortgagor and must be paid out of maintenance charges payable by Mortgagor's tenant shareholders under their proprietary leases or occupancy agreements. (iv) Mortgagee or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Premises. (v) Immediately upon appointment of a receiver or immediately upon Mortgagee's entering upon and taking possession and control of the Premises, Mortgagor will surrender possession of the Premises to Mortgagee or the receiver, as the case may be, and will deliver to Mortgagee or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Premises and all security deposits and prepaid Rents. (vi) If Mortgagee takes possession and control of the Premises, then Mortgagee may exclude Mortgagor and its representatives from the Premises. Mortgagor acknowledges and agrees that the exercise by Mortgagee of any of the rights conferred under this Section 7 will not be construed to make Mortgagee a mortgagee-in-possession of the Premises so long as Mortgagee has not itself entered into actual possession of the Land and Improvements. (D) If Mortgagee enters the Premises, Mortgagee will be liable to account only to Mortgagor and only for those Rents actually received. Except to the extent of Mortgagee's gross negligence or willful misconduct, Mortgagee will not be liable to the Borrower, anyone claiming under or through Mortgagor or anyone having an interest in the Premises, by reason of any act or omission of Mortgagee under Section 7(C) of this Instrument, and Mortgagor hereby releases and discharges Mortgagee from any such liability to the fullest extent permitted by law. If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness. (E) If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness as provided in Section 10 of this Instrument. (F) Any entering upon and taking of control of the Premises by Mortgagee or the receiver, as the case may be, and any application of Rents as provided in this Instrument will not cure or waive any Event of Default or invalidate any other right or remedy of Mortgagee under applicable law or provided for in this Instrument. (F) During the existence of an Event of Default, Mortgagee may enter into possession of the Premises, with or without legal action, and by force, if necessary; collect all Rents (which term will also include sums payable for use and occupation) and, after deducting all costs of collection and administration expenses, apply the rents in accordance with Section 7 of this Instrument; and for that purpose Mortgagor hereby confirms The assignment to Mortgagee of all Rents due and to become due under all Leases created after the date of this Instrument, as well as all rights and remedies provided in such Lease or Leases or at law or in equity for the collection of Rents. The taking of possession and collection of Rents by Mortgagee will not be construed to be an affirmation of any Lease. **FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PREMISES DURING THE EXISTENCE OF AN EVENT OF DEFAULT, MORTGAGOR AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, IN AN ACTION IN**

EJECTMENT FOR POSSESSION OF THE PREMISES, IN FAVOR OF
MORTGAGEE, FOR WHICH THIS INSTRUMENT, OR A COPY VERIFIED BY
AFFIDAVIT, WILL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT
OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE
PREMISES, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER
AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH
ACTION HAS BEEN COMMENCED IT WILL BE DISCONTINUED, OR
POSSESSION OF THE PREMISES WILL REMAIN IN OR BE RESTORED TO
MORTGAGOR, MORTGAGEE WILL HAVE THE RIGHT FOR THE SAME
DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE
FURTHER ACTIONS OF EJECTMENT TO RECOVER POSSESSION OF THE
PREMISES. MORTGAGEE MAY CONFESS JUDGMENT IN AN ACTION IN
EJECTMENT BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO
FORECLOSE THIS INSTRUMENT OR TO ENFORCE THE NOTE, OR AFTER
ENTRY OF JUDGMENT IN THE ACTION OF EJECTMENT OR ON THE NOTE,
OR AFTER A SHERIFF'S SALE OR JUDICIAL SALE OR OTHER FORECLOSURE
SALE OF THE PREMISES IN WHICH MORTGAGEE IS THE SUCCESSFUL
BIDDER. THIS AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR
CONFESSION OF JUDGMENT IS AN ESSENTIAL PART OF THE REMEDIES FOR
ENFORCEMENT OF THIS INSTRUMENT AND THE NOTE, AND WILL SURVIVE
ANY EXECUTION SALE TO MORTGAGEE.

8. Assignment of Leases; Leases Affecting the Premises. (A) As part of the consideration for
the Indebtedness, Mortgagor absolutely and unconditionally assigns and transfers to
Mortgagee all of Mortgagor's right, title, and interest in, to, and under the Leases, including
Mortgagor's right, power and authority to modify the terms of any such Lease, or extend or
terminate any such Lease. It is the intention of Mortgagor's to establish a present, absolute and
irrevocable transfer and assignment to Mortgagee of all of Mortgagor's right, title and interest
in, to, and under the Leases. Mortgagor and Mortgagee intend this assignment of the Leases to
be immediately effective and to constitute an absolute present assignment and not an
assignment for additional security only. For purposes of giving effect to this absolute
assignment of the Leases, and for no other purpose, the Leases will not be deemed to be a part
of the Premises. However, if this present, absolute and unconditional assignment of the Leases
is not enforceable by its terms under the laws of the commonwealth of Pennsylvania, then the
Leases will be included as a part of the Premises and it is the intention of Mortgagor that in
this circumstance this Instrument create and perfect a lien on the Leases in favor of Mortgagee,
which lien will be effective as of the date of this Instrument. (B) Until Mortgagee gives Notice
to Mortgagor of Mortgagee's exercise of its rights under this Section 8, Mortgagor will have
all rights, power and authority granted to Mortgagor under any Lease (except as otherwise
limited by this Section 8 or any other provision of this Instrument), including the right, power
and authority to modify the terms of any Lease or extend or terminate any Lease. Upon the
occurrence of an Event of Default, and during the continuance of such Event of Default, the
permission given to Mortgagor pursuant to the preceding sentence to exercise all rights, power
and authority under Leases will automatically terminate. Mortgagor will comply with and
observe Mortgagor's obligations under all Leases, including Mortgagor's obligations
pertaining to the maintenance and disposition of tenant security deposits. (C) Mortgagor
acknowledges and agrees that the exercise by Mortgagee, either directly or by a receiver, of

any of the rights conferred under this Section 8 will not be construed to make Mortgagee a mortgagee-in-possession of the Premises so long as Mortgagee has not itself entered into actual possession of the Land and the Improvements. The acceptance by Mortgagee of the assignment of the Leases pursuant to Section 8(A) of this Instrument will not at any time or in any event obligate Mortgagee to take any action under this Instrument or to expend any money or to incur any expenses. Except to the extent of Mortgagee's gross negligence or willful misconduct, Mortgagee will not be liable in any way for any injury or damage to the Person or property sustained by any Person or Persons in or about the Premises. Prior to Mortgagee's actual entry into and taking possession of the Premises, Mortgagee will not be obligated for any of the following: (i) performing any of the terms, covenants and conditions contained in any Lease, or any obligation with respect to any Lease; (ii) appearing in or defending any action or proceeding relating to the Lease or the Premises; (iii) the operation, control, care, management or repair of the Premises or any portion of the Premises. The execution of this Instrument by Mortgagor will constitute conclusive evidence that all responsibility for the operation, control, care, management, and repair of the Premises are and will be that of Mortgagor, prior to such actual entry and taking of possession. (D) Upon delivery of Notice by Mortgagee to Mortgagor of Mortgagee's exercise of its rights under this Section 8 at any time after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Mortgagee entering upon and taking and maintaining control of the Premises directly, by a receiver, or by any other manner or proceeding permitted by the laws of the commonwealth of Pennsylvania, Mortgagee immediately will have all rights, powers and authority granted to Mortgagor under any Lease, including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease. (E) Mortgagor will, promptly upon Mortgagee's request, deliver to Mortgagee an executed copy of each Lease then in effect. (F) If Mortgagor is a cooperative housing corporation or association, notwithstanding anything to the contrary contained in this Instrument, so long as Mortgagor remains a cooperative housing corporation or association and is not in breach of any covenant of this Instrument, Mortgagee consents to the following: (i) Mortgagor may execute leases of apartments for a term in excess of two (2) years to a tenant shareholder of Mortgagor so long as such leases, including proprietary leases, are and will remain subordinate to the lien of this Instrument. (ii) Mortgagor may surrender or terminate such leases of apartments where the surrendered or terminated lease is immediately replaced or where Mortgagor uses its best efforts to secure such immediate replacement by a newly-executed lease of the same apartment to a tenant shareholder of Mortgagor. However, no consent is given by Mortgagee to any execution, surrender, termination or assignment of a lease under terms that would waive or reduce the obligation of the resulting tenant shareholder under such lease to pay cooperative assessments in full when due or the obligation of the former tenant shareholder to pay any unpaid portion of such assessments.

9. Application of Payments. If at any time Mortgagee receives, from Mortgagor or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Mortgagee may apply that payment to amounts then due and payable in any manner and in any order determined by Mortgagee, in Mortgagee's discretion. Neither Mortgagee's acceptance of an amount that is less than all amounts then due and payable nor Mortgagee's application of such payment in the manner authorized will constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Mortgagor's

**Page 9 of 16**

obligations under this Instrument, the Note and all other Loan Documents will remain unchanged.

10. Protection of Mortgagee's Security; Instrument Secures Future Advances. If Mortgagor should fail to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Premises, Mortgagee's security, or Mortgagee's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws (as hereinafter defined), fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Mortgagee, at Mortgagee's option may make such appearances, file such documents, disburse such sums and take such actions as Mortgagee reasonably deems necessary to perform such obligations of Mortgagor and to protect Mortgagee's interest, including all of the following: (i) payment of attorney's fees and costs; (ii) enter upon the Premises to make repairs or secure the Premises; procure insurance as required by the Loan Agreement; (iii) pay any amounts which Mortgagor has failed to pay under this Instrument, the Loan Agreement, or any of the Loan Documents; (iv) perform any of the Mortgagor's obligations under the Loan Agreement; (v) make advances to pay, satisfy or discharge any obligation of the Mortgagor for the payment of money that is secured by a lien on the Premises. Any amounts disbursed by Mortgagee under this Section 10 or under any other provision of this Instrument that treats such disbursement as being made under this Section 10, will be secured by this Instrument, will be added to, and become part of, the principal component of the Indebtedness, will be immediately due and payable and will bear interest from the date of disbursement until paid at the Default Rate (as defined in the Note). Nothing in this Section 10 will require Mortgagee to incur any expense or take any action. The provisions of this Section 10, including the obligation to indemnify Mortgagee, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Instrument and shall not be affected by Mortgagee's acquisition of any interest in the Premises, whether by foreclosure or otherwise. As used herein, the term "Hazardous Materials Law" and "Hazardous Materials Laws" means any and all federal, state and local laws, ordinances, regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future, including all amendments, that relate to Hazardous Materials (as hereinafter defined) or the protection of human health or the environment and apply to Mortgagor or to the Premises. Hazardous Materials Laws include the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq., the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901, et seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601, et seq., the Clean Water Act, 33 U.S.C. Section 1251, et seq., and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101 et seq., and their state analogs. As used herein, the term "Hazardous Materials" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls (PCBs) and compounds containing them; lead and lead-based paint; asbestos or asbestos containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Premises are prohibited by any governmental authority; any substance that requires special handling and any other material or substance now or in the future that (i) is defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant,"

**Page 10 of 16**

"contaminant," or "pollutant" by or within the meaning of any Hazardous Materials Law, or (ii) is regulated in any way by or within the meaning of any Hazardous Materials Law.

11. Events of Default. An Event of Default under the Note, the Loan Agreement, or any other Loan Documents will constitute an Event of Default under this Instrument. Upon the occurrence of an Event of Default, the Indebtedness shall become due and payable forthwith at the option of Mortgagee.

12. Remedies Cumulative. Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument, the Loan Agreement or any other Loan Document or afforded by applicable law or equity, and each will be cumulative and may be exercised concurrently, independently or successively, in any order. Mortgagee's exercise of any particular right or remedy will not in any way prevent Mortgagee from exercising any other right or remedy available to Mortgagee. Mortgagee may exercise any such remedies from time to time and as often as Mortgagee chooses.

13. Waiver of Statute of Limitations, Offsets, and Counterclaims. Mortgagor waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce any Loan Document. Mortgagor hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Mortgagee or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Mortgagee to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Mortgagor is obligated to make under any of the Loan Documents.

14. Waiver of Marshalling. Notwithstanding the existence of any other security interests in the Premises held by Mortgagee or by any other party, Mortgagee will have the right to determine the order in which any or all of the Premises will be subjected to the remedies provided in this Instrument, the Note, the Loan Agreement, or any other Loan Document, or applicable law. Mortgagee will have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Mortgagor and any party who now or in the future acquires a security interest in the Premises and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Premises be sold in the inverse order of alienation or that any of the Premises be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

15. Further Assurances. Mortgagor will deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements or amendments, transfers and assurances as Mortgagee may require from time to time in order to better assure, grant, and convey to Mortgagee the rights intended to be granted, now or in the future, to Mortgagee under this Instrument and the Loan Documents.

16. Governing Law; Consent to Jurisdiction and Venue. This Instrument, and the provisions for the creation, perfection, priority, enforcement, and foreclosure of the liens and security interests created in the Premises will be governed by, and construed in accordance with, the laws of the commonwealth of Pennsylvania. Notwithstanding the foregoing, the law of the

state of Connecticut shall govern the validity and enforceability of all Loan Documents, and the Indebtedness arising hereunder (but the foregoing shall not be construed to limit Mortgagee's rights with respect to such security interest created in the commonwealth of Pennsylvania). Nothing in this Section 16 is intended to limit Mortgagee's right to bring any suit, action or proceeding relating to matters under this Instrument, the Note, the Loan Agreement, or any of the Loan Documents in any court of any other jurisdiction.

17. Notices. All notices, demands, and other communications required hereunder or otherwise related to this Instrument must be given in accordance with the terms and conditions set forth in the Loan Agreement.

18. Successors and Assigns. This Instrument will bind the respective successors and assigns of Mortgagor and Mortgagee, and the rights granted by this Instrument will inure to Mortgagee's successors and assigns.

19. Joint and Several Liability. If more than one party signs this Instrument as Mortgagor, the obligations of such Persons will be joint and several.

20. Relationship of Parties; No Third-Party Beneficiary. The relationship between Mortgagee and Mortgagor will be solely that of creditor and debtor, respectively, and nothing contained in this Instrument will create any other relationship between Mortgagee and Mortgagor. Nothing contained in this Instrument will constitute Mortgagee as a joint venturer, partner or agent of Mortgagor, or render Mortgagee liable for any debts, obligations, acts, omissions, representations or contracts of Mortgagor. No creditor of any party to this Instrument and no other Person will be a third-party beneficiary of this Instrument or any other Loan Document.

21. Severability; Amendments; Construction The invalidity or unenforceability of any provision of this Instrument will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought. The captions and headings of the sections of this Instrument are for convenience only and will be disregarded in construing this Instrument. Any reference in this Instrument to a "Section" will, unless otherwise explicitly provided, be construed as referring to a section of this Instrument. Any reference in this Instrument to a statute or regulation will be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." Unless the context requires otherwise, any definition of or reference to any agreement, instrument, or other document in this Instrument will be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument). Any reference in this Instrument to any Person will be construed to include such Person's successors and assigns. Any capitalized term not specifically defined in this Instrument will have the meaning ascribed to that term in the Loan Agreement. The term "Person" as used herein, shall mean any natural person, sole proprietorship, corporation,

general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

22. Subrogation. If, and to the extent that, the proceeds of the loan evidenced by the Note, or subsequent advances under Section 10 of this Instrument, are used to pay, satisfy or discharge a prior lien, such loan proceeds or advances will be deemed to have been disbursed by Mortgagee at Mortgagor's request, and Mortgagee will automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the prior lien, whether or not the prior lien is released.

23. Confession of Judgment in Ejectment. To the extent permissible under the laws of the commonwealth of Pennsylvania, at any time after an Event of Default, regardless of whether Mortgagee has asserted any other right or exercised any other remedy under this Instrument or any of the other Loan Documents, it shall be lawful for any attorney of any court to confess judgment in ejectment against Mortgagor and all Persons claiming under Mortgagor for the recovery by Mortgagee of possession of all or any part of the Premises, for which this Instrument shall be sufficient warrant. If for any reason after such action shall have commenced the same shall be discontinued and the possession of the Premises shall remain in or be restored to Mortgagor, Mortgagee shall have the right upon subsequent default or defaults to bring one or more action or actions as hereinabove set forth to recover possession of all or any part of the Premises.

24. Acceleration; Remedies. At any time during the existence of an Event of Default, Mortgagee, at Mortgagee's option, may declare the Indebtedness to be immediately due and payable without further demand and may foreclose the lien of this Instrument by judicial proceedings and may invoke any other remedies permitted by Pennsylvania law or provided in this Instrument, the Loan Agreement or in any other Loan Document. Mortgagee will be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorneys' fees and costs or fifteen percent (15%) of the unpaid balance of the sums secured by this Instrument, but not less than five thousand dollars ($5,000.00), and costs of documentary evidence, abstracts, and title reports.

25. Release. Upon payment of the Indebtedness, this Instrument will become null and void and . Mortgagee will discharge this Instrument. Mortgagor will pay Mortgagee's reasonable costs incurred in discharging this Instrument.

26. Purchase Money Mortgage. If the proceeds of the Indebtedness are used by Mortgagor to pay all or a part of the purchase price of the Premises, this Instrument is declared to be a purchase money mortgage and will be entitled to all the benefits as such under the lien priority provisions of the Pennsylvania Judicial Code, 42 Pa. Con. Stat. Ann. Section 8141, as amended.

27. Future Advances. This Instrument secures future advances. Notwithstanding anything to the contrary contained in this Instrument, the maximum amount of indebtedness outstanding at

**Page 13 of 16**

any time which may be secured by this Instrument is One Hundred Forty-Six Thousand Two Hundred Fifty Dollars and No Cents ($146,250.00), plus accrued and unpaid interest.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has signed and delivered this Mortgage, Assignment of Rents, and Security Agreement or has caused said instrument to be signed and delivered by its duly authorized representative on ___Jan___ _15_, 20 21 .

**Innovative Solutions and Improvements LLC**

Witness: _____

By: _____
Name: Kenneth Hayward
Title: Sole Member

Witness: _____

STATE OF ___PA_____                  )
                                           )ss. _____
COUNTY OF ___Phila_____                )

I certify that on ___Jan__ _15_, 20 21 , Kenneth Hayward came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as Sole Member of Innovative Solutions and Improvements LLC (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and its members.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
Pamela Ann Rader, Notary Public
Delaware County
My commission expires May 27, 2022
Commission number 1133570
Member, Pennsylvania Association of Notaries

**Page 15 of 16**

## SCHEDULE 1
## PROPERTY DESCRIPTION

The land referred to herein below is situated in the County of Philadelphia, State of Pennsylvania, and described as follows:

ALL THAT CERTAIN lot or piece of ground with a brick messuage or tenement thereon erected, described according to a Survey and Plan made by J.H. Webster, Jr., Surveyor and Regulator of the Tenth District on April 4, 1922.

SITUATE on the Southwest side of Overington Street (Forty feet wide), in the Twenty-third Ward of the City of Philadelphia.

BEGINNING at the distance of twenty-five feet Northwestward from the Northwesterly side of Griscom Street (formerly Franklin Street), (Forty feet wide); thence extending through the center of a certain party wall South Thirty-seven degrees, six minutes, fifteen seconds West Sixty-six feet; Thence extending on a line parallel with Overington Street North Fifty-three degrees, Twenty-nine minutes West twenty-five feet, Two inches to a point, Thence extending North Thirty-six degrees thirty-seven minutes, thirty seconds East Sixty-six feet to the Southwesterly side of Overington Street, Thence extending along the same South Fifty-three degrees, twenty-nine minutes, East, Twenty-five feet, Eight and five-eighths inches to the first mentioned point and place of beginning.

BEING No. 1522 Overington Street.

OPA NO. 232117500

BEING the same premises which Wells Fargo Bank, National Association, as Trustee for Banc of America Alternative Loan Trust 2006-7 Mortgage Pass-Through Certificates, Series 2006-7, by Nationstar Mortgage, LLC, as Attorney in Fact, by Deed dated 08/02/2018 and recorded 09/11/2018 in the Office of the Recorder of Deeds in and for the County of Philadelphia in Document No. 53415502, granted and conveyed unto Gjanda Properties, LLC and Innovative Solutions and Improvements, LLC.

**Page 16 of 16**

# EXHIBIT "D"

## SCHEDULE 1
## PROPERTY DESCRIPTION

The land referred to herein below is situated in the County of Philadelphia, State of Pennsylvania, and described as follows:

ALL THAT CERTAIN lot or piece of ground with a brick messuage or tenement thereon erected, described according to a Survey and Plan made by J.H. Webster, Jr., Surveyor and Regulator of the Tenth District on April 4, 1922.

SITUATE on the Southwest side of Overington Street (Forty feet wide), in the Twenty-third Ward of the City of Philadelphia.

BEGINNING at the distance of twenty-five feet Northwestward from the Northwesterly side of Griscom Street (formerly Franklin Street), (Forty feet wide); thence extending through the center of a certain party wall South Thirty-seven degrees, six minutes, fifteen seconds West Sixty-six feet; Thence extending on a line parallel with Overington Street North Fifty-three degrees, Twenty-nine minutes West twenty-five feet, Two inches to a point, Thence extending North Thirty-six degrees thirty-seven minutes, thirty seconds East Sixty-six feet to the Southwesterly side of Overington Street, Thence extending along the same South Fifty-three degrees, twenty-nine minutes, East, Twenty-five feet, Eight and five-eighths inches to the first mentioned point and place of beginning.

BEING No. 1522 Overington Street.

OPA NO. 232117500

BEING the same premises which Wells Fargo Bank, National Association, as Trustee for Banc of America Alternative Loan Trust 2006-7 Mortgage Pass-Through Certificates, Series 2006-7, by Nationstar Mortgage, LLC, as Attorney in Fact, by Deed dated 08/02/2018 and recorded 09/11/2018 in the Office of the Recorder of Deeds in and for the County of Philadelphia in Document No. 53415502, granted and conveyed unto Gjanda Properties, LLC and Innovative Solutions and Improvements, LLC.

# EXHIBIT "E"

eRecorded in Philadelphia PA   Doc Id: 54508274
01/08/2026 11:17 AM     Page 1 of 3    Rec Fee: $246.75
Receipt#: 26-01822
Records Department    Doc Code: A

Record and Return to:

Hladik Onorato & Federman LLP
298 Wissahickon Avenue
North Wales, PA 19454

Parcel ID No. 232117500

## ASSIGNMENT OF MORTGAGE

Date of Assignment: 12|17|25

### KNOW ALL MEN BY THESE PRESENTS:

**RCN Capital, LLC,** herein designated as the Assignor, for and in consideration of the sum of ONE and 00/100 ($1.00) DOLLAR and other good and valuable consideration, the receipt whereof is hereby acknowledged, does by these presents assign to **U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Greene Street Funding Trust II,** 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107, herein designated as the Assignee, a certain Mortgage to RCN Capital, LLC dated January 15, 2021 and recorded January 22, 2021 made by **Innovative Solutions and Improvements, LLC, a Pennsylvania Limited Liability Company, by Kenneth Hayward, Sole Member** on lands located in the County of Philadelphia State of Pennsylvania to secure payment of the sum of $146,250.00 which mortgage is recorded or registered in the Recorder of Deeds Office of the County of Philadelphia as Instrument No. 53782704.

**Property Address: 1522 Overington Street, Philadelphia, PA 19124.**

TOGETHER with the Bond, Note or other Obligation therein described, and the money due and to grow due thereon, with the interest. **TO HAVE AND TO HOLD** the same unto the said Assignee forever, subject only to all the provisions contained the said Mortgage and the Bond, Note or other Obligation.

**AND** the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense, to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

I do hereby certify that the precise address of **U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee of Greene Street Funding Trust II,** is 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107.

Attested By:

File #24-01323

In all references herein to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

**IN WITNESS WHEREOF,** the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed this ⎯17⎯ day of ⎯December⎯, 2025.

Attest:                                                  RCN Capital, LLC

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
(Signature) Paul Matarazzo                    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
                                                        Signature

                                                        ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
                                                        Name: Bridget Fiala
                                                        Title: Deputy Corporate Counsel

## CERTIFICATE OF ACKNOWLEDGMENT

State of Connecticut :

SS                    :

County of Harford    :

BE IT REMEMBERED, that on this ⎯17⎯ day of ⎯December⎯, 2025, before me, the undersigned Notary Public, personally appeared Bridget Fiala, who came before me and acknowledged under oath herself/himself to be the Deputy Corporate Counsel of RCN Capital, LLC, and he/she, as such being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself/herself.

Sworn to and subscribed before me
the date aforesaid.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Notary Public
My Commission Expires:

File #24-01323

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF PHILADELPHIA, STATE OF PENNSYLVANIA, AND DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH A BRICK MESSUAGE OR TENEMENT THEREON ERECTED, DESCRIBED ACCORDING TO A SURVEY AND PLAN MADE BY J.H. WEBSTER, JR., SURVEYOR AND REGULATOR OF THE TENTH DISTRICT ON APRIL 4, 1922.

SITUATE ON THE SOUTHWEST SIDE OF OVERINGTON STREET (FORTY FEET WIDE), IN THE TWENTY-THIRD WARD OF THE CITY OF PHILADELPHIA.

BEGINNING AT THE DISTANCE OF TWENTY-FIVE FEET NORTHWESTWARD FROM THE NORTHWESTERLY SIDE OF GRISCOM STREET (FORMERLY FRANKLIN STREET), (FORTY FEET WIDE); THENCE EXTENDING THROUGH THE CENTER OF A CERTAIN PARTY WALL SOUTH THIRTY-SEVEN DEGREES, SIX MINUTES, FIFTEEN SECONDS WEST SIXTY-SIX FEET; THENCE EXTENDING ON A LINE PARALLEL WITH OVERINGTON STREET NORTH FIFTY-THREE DEGREES, TWENTY-NINE MINUTES WEST TWENTY-FIVE FEET, TWO INCHES TO A POINT, THENCE EXTENDING NORTH THIRTY-SIX DEGREES THIRTY-SEVEN MINUTES, THIRTY SECONDS EAST SIXTY-SIX FEET TO THE SOUTHWESTERLY SIDE OF OVERINGTON STREET, THENCE EXTENDING ALONG THE SAME SOUTH FIFTY-THREE DEGREES, TWENTY-NINE MINUTES, EAST, TWENTY-FIVE FEET, EIGHT AND FIVE-EIGHTHS INCHES TO THE FIRST MENTIONED POINT AND PLACE OF BEGINNING.

BEING NO. 1522 OVERINGTON STREET.

OPA NO. 232117500

File #24-01323

# EXHIBIT "F"

4/19/24, 1:28 PM                                         View/Print Label

# View/Print Label

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialogue box that appears. Note: If your browser does not support this function, select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a scheduled Pickup**
   - Your driver will pickup your shipment(s) as usual.

   **Customers without a scheduled Pickup**
   - Schedule a Pickup on ups.com to have a UPS driver pickup all of your packages.
   - Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. To find the location nearest you, please visit the 'Locations' Quick link at ups.com.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
| --- | --- | --- |
| THE UPS STORE | CVS STORE # 8731 | THE UPS STORE |
| 27 N WACKER DR | 400 W MADISON ST | 17 E MONROE ST |
| CHICAGO IL 60606-2800 | CHICAGO IL 60606-2701 | CHICAGO IL 60603-5608 |

FOLD HERE



about:blank                                                                                          1/1



222 W Adams St. # 3150
Chicago, IL 60606

April 19, 2024

**VIA UPS 2nd DAY AIR AND E-MAIL**
INNOVATIVE          SOLUTIONS          AND  CC:  KENNETH HAYWARD
IMPROVEMENTS LLC                                   bigchampsec72@gmail.com
6335 E FARISTON
PHILADELPHIA, PA 19120


RE:    **Mortgage Loan Number:** ▮▮▮▮▮▮ **(the "Loan");**
       **Property Addresses: 1522 OVERINGTON ST, PHILADELPHIA, PA 19124 (each**
       **individually a "Property" and collectively the "Properties")**

# NOTICE OF DEFAULT

Dear INNOVATIVE SOLUTIONS AND IMPROVEMENTS LLC, KENNETH HAYWARD,

This notice is sent on behalf of RF Mortgage Services Corporation (the "Servicer") to inform of a default under the terms of the Loan and Security Agreement (the "Loan Agreement"), Secured Note (the "Note"), Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Mortgage"), (together collectively the "Loan Documents") originally made payable to RCN CAPITAL, LLC, its successors and assigns (the "Lender"), and secured by the Properties listed above.

The default under the terms of the Loan Documents consists of, but is not necessarily limited to, the following:

- Failure to meet monthly payment obligations under the terms of the Loan Documents.

**UPON EXPIRATION OF THE PAYMENT GRACE PERIOD A LATE CHARGE WAS ASSESSED AND DEFAULT INTEREST BEGAN TO ACCRUE AT $66.24 PER DAY AND WILL CONTINUE ACCRUING UNTIL CURE OF ALL DEFAULTS. ACCRUED DEFAULT INTEREST IS COLLECTED SEPARATE FROM THE CURE AMOUNT WITH THE NEXT SCHEDULED MONTHLY PAYMENT.**

**The default may be cured with the following actions:**

- Remit to Lender via wire all amounts due for the 4/1/2024 monthly payment inclusive of all fees and other amounts advanced by Lender, an amount totaling $1,354.71, no later than 4/26/2024.
- Payments must be made by wire. Wire instructions are enclosed with this letter.

**IF YOU FAIL TO TIMELY CURE, LENDER MAY TAKE LEGAL ACTION AGAINST YOU.**



Specifically, Lender may exercise or pursue foreclosure on one or more of the Properties or any other remedy or cause of action permitted at law or in equity or under the Loan Documents, and any associated personal guaranty agreement.

Servicer hereby provides notice of Lender's express preservation of all rights and remedies regarding any and all other violations of the terms of the Loan Documents already in existence or which may be discovered in the future.

Please note this Notice of Default is sent as a courtesy, and Lender may elect to pursue its remedies inclusive of foreclosure with no further notice.

You also have the right to cure the default by paying the total amount due plus any additional amounts for principal, interest, late charges and other amounts, including amounts we may have advanced on your behalf (the "Payoff Amount"). Please contact us for a current payoff statement and wire instructions before sending your payment.

If you elect to remit the Payoff Amount, funds must be paid by wire transfer. Payments in the form of a personal check or anything other than wire may be returned. Failure to pay either the Payoff Amount or the amounts listed above necessary to cure the default in a timely manner, or to otherwise cure the default referenced in this letter, may result in foreclosure on the security agreement by judicial proceedings, invocation of the power of sale, and/or any other remedies permitted by law.

If you have any questions or need additional information, please contact our default servicing team at 312-878-7673.

If you have received a discharge in bankruptcy, or if you are subject to an automatic stay of collection efforts under applicable bankruptcy law, and the debt related to the above mortgage was not reaffirmed, this notice is not and should not be construed, nor is it intended, to be an attempt to collect a debt, but rather is only a notice regarding enforcement of a lien against the mortgaged property.

If you believe that you are entitled to the benefits as outlined in the Servicemembers' Civil Relief Act, you should promptly provide us with evidence of your active duty status.


Sincerely,


Servicing Department
RF Mortgage Services Corporation


Enclosure: wire instructions


NOTICE OF DEFAULT

<u>WIRE INSTRUCTIONS – RENOVO FINANCIAL</u>

Beneficiary Bank: **JPMorgan Chase Bank, N.A.**

Bank Address: **New York, NY 10017**

ABA Routing Number: **021000021**

Account Number: **937068218**

Beneficiary/Account Holder: **RFMSC – Clearing Account A**

Beneficiary Address: **222 W. Adams St., Suite 3150
                      Chicago, IL 60606**

**\*Please reference loan number**

\*\*To receive funds from outside the United States, the sender's bank will select a US Correspondent Bank through which the funds will be sent. Upon receipt of funds, the U.S. Correspondent Bank will then forward the payment via Fedwire using our Incoming Wire Instructions. It is recommended that the sending party consult with their bank to determine the best route to the US.\*\*

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

U.S. Bank Trust National Association, et al.

## DEFENDANTS

Innovative Solutions and Improvements LLC, Kenneth Hayward

**(b)** County of Residence of First Listed Plaintiff    **Cook**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    **Philadelphia**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Hladik, Onorato & Federman, LLP 298 Wissahickon Avenue, North Wales, PA 19454 215-855-9521

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                           *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1332(a) and 28 U.S.C. §1391(a)

Brief description of cause:
Mortgage Foreclosure

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
$202,159.76

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
April 16, 2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

10/2024

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

Place of Accident, Incident, or Transaction: <u>Philadelphia, Pennsylvania</u>

---

*RELATED CASE IF ANY:*  Case Number:_____  Judge:_____

1. Does this case involve property included in an earlier numbered suit?     Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?     Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?     Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.     Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.*    *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.*    *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☒ 8. All Other Diversity Cases: *(Please specify)* <u>28 U.S.C. §1332(a)</u> <u>Mortgage Foreclosure</u>

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ does / ☒ **does not** have implications beyond the parties before the court and ☐ does / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

### ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)

I certify that, to the best of my knowledge and belief:

**☒ X**   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.